1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DONNA S. MILLER,                     )   1:09cv01084 DLB
                                     )
                                     )
                                     )   ORDER REGARDING PLAINTIFF'S
            Plaintiff,               )   SOCIAL SECURITY COMPLAINT
                                     )
    v.                               )
                                     )
MICHAEL J. ASTRUE, Commissioner      )
of Social Security,                  )
                                     )
                                     )
            Defendant.               )
_____)

## BACKGROUND

Plaintiff Donna S. Miller ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on June 30, 2006, alleging disability since May 24, 2006, due to obesity and asthma. AR 133-135, 151-158. After Plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

("ALJ").  AR 65-69, 71-75, 76.  On August 4, 2008, ALJ James Berry held a hearing.  AR 25-51.
He denied benefits on September 29, 2008.  AR 11-20.  The Appeals Council denied review on
May 7, 2009.  AR 1-3.

Hearing Testimony

On August 4, 2008, ALJ Berry held a hearing in Fresno, California.  Plaintiff appeared
without an attorney.  Vocational expert ("VE") Cheryl Chandler also appeared and testified.  AR
25.

At the beginning of the hearing, Plaintiff testified that she wanted to proceed without a
representative.  AR 27.  Plaintiff indicated that she had records that she wanted to add to her file,
but that she did not have them with her.  She explained that after she filed her application, she
was diagnosed with excessive anxiety and depression.  Plaintiff also indicated that she had a
"paper" from her doctor stating that she could not work.  AR 28.  She asked to include records
from Community Hospital and Sierra Clinic in her file.  AR 29.  Plaintiff further stated that she
had someone her to testify on her behalf, but she was not allowed in because of inadequate
identification.  AR 30.

Plaintiff testified that she was 48 years old at the time of the hearing.  She completed the
twelfth grade and had additional training as a medical assistant, level one.  AR 31-32.  She last
worked for pay about five months ago, when she watched her grandson Tuesdays through
Fridays, for about six hours a day.  Her neighbor helped her watch him.  AR 32.  Prior to that, she
worked for an in-home provider in 2006 for about six months, when she was let go because of
her asthma.  AR 33.  She also worked as a cashier and a nurse's aide.  AR 33-34.  Plaintiff
currently supports herself with General Relief and Food Stamps.  AR 36.

Plaintiff believed that she could not work because her asthma has worsened to the point
where she can't do anything.  She also testified that her weight and anxiety keep her from
working.  She felt that her excessive anxiety was the main reason she could not work.  AR 37.

Plaintiff testified that she has had asthma since she was 13 and has a "couple" asthma
attacks a week.  When she has an asthma attack, her chest is tight and she cannot catch her
breath.  If she can get to her medicine in time, her attacks last 10 minutes.  If not, she needs to go

to the hospital for steroids.  AR 37-38.  Plaintiff uses an inhaler and nebulizer and estimated that about 70 percent of the time, she can catch her breath and doesn't need to go to the hospital.  AR 38.  She believed that her medication was helpful as long as she did not perform any activities.  AR 43.

Plaintiff testified that she weighed 460 pounds and has been at this weight for about two years.  She believed that her asthma caused her to weigh so much because she cannot exercise or walk.  AR 40.  She has tried dieting and was seeing a nutritionist but she has not been able to lose weight.  AR 40.  Plaintiff also takes medication for high blood pressure.  AR 41.

As to her anxiety, Plaintiff testified that if she is around people, she feels closed in, her stomach starts to hurt and she can't breath.  It takes about 10 minutes for her medication to kick in, and then she's fine for a while.  This happens everyday.  AR 42-43.  Plaintiff tried to see a mental health professional but could not because she did not have insurance.  AR 43.

Plaintiff did not know how to describe her depression, for which she takes medication.  AR 43.  Her depression and anxiety started about a year ago, when she was in a car accident.  AR 43.  She did not think that any of her medications caused side effects.  AR 44.

Plaintiff believed that she could stand for about 30 minutes in an eight hour period and sit for about 30 minutes.  She did not think she could lift over three pounds but she could carry three pounds.  Plaintiff testified that she spends most of her day in bed.  AR 45.  She explained that she takes a tranquilizer for anxiety in the morning and afternoon and is "out of it most of the day."  Her neighbor comes over to help her get dressed, cook and clean.  The depression medication also makes her tired and she can't really do anything.  AR 46.  She does not leave home often, though her daughter sometimes takes Plaintiff to her house or to doctor's visits.  AR 46.  Her daughter picks up all of her medications.  AR 46. Plaintiff does not watch her grandson anymore and when he's over now, her daughter stays.  AR 46.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could lift and carry 20 pounds occasionally, 10 pounds frequently, and stand, walk or sit six hours each.  This person must avoid concentrated exposure

to pulmonary irritants.  The VE testified that this person could perform Plaintiff's past work as a medical assistant and cashier.  AR 48-49.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry three pounds maximum, stand and walk for 30 minutes and sit for 1.5 hours maximum. This person would have difficulty relating to and interacting with others.  This person would also have to avoid pulmonary irritants.  The VE testified that this person could not perform any work. AR 49.

Medical Record

Plaintiff went to the emergency room ("ER") on March 30, 2005, because she was having trouble breathing.  Her breathing did not improve after using albuterol at home.  A chest x-ray showed interstitial pneumonia in the left lung.  She was given a breathing treatment and was discharged feeling better.  AR 296-302.

Plaintiff was seen in the ER on April 19, 2005, for breathing problems.  She was coughing and had pain with deep breaths.  Her oxygen saturation level was 96 percent.  Chest x-rays suggested acute bronchitis.  Plaintiff was diagnosed with pneumonia in her left lung and discharged with medication.  AR 286-295.

Plaintiff returned to the ER on October 8, 2005, because her asthma was "acting up."  Her oxygen saturation level was 96 percent.  She was diagnosed with an upper respiratory infection and discharged with medication.  AR 280-285.

On October 22, 2005, Plaintiff was seen in the ER in the early morning after she awoke in the middle of the night and could not breath.  Her oxygen saturation level was 96 percent and her blood pressure was 162/99.  She had decreased breath sounds and was noted to be morbidly obese.  A chest x-ray and ECG were normal.  She was treated with medication and discharged in good condition.  AR 265-272.

Plaintiff returned to the ER later that night, complaining of stomach acid and difficulty breathing.  After a breathing treatment, Plaintiff reported that she felt 100 percent better.  She was diagnosed with GERD and anxiety and discharged with medication.  AR 273-279.

Plaintiff was seen in the ER again on October 29, 2005.  She complained that her asthma was worse and that she didn't feel right.  She also thought the steroid medication was making her swell and that her albuterol was not working.  On examination, Plaintiff was tearful and anxious. She had decreased breath sounds in all fields.  Chest x-rays were negative for acute cardiopulmonary disease.  Plaintiff was treated with medication and diagnosed with bronchitis and early right lower lobe infiltrate.  AR 257-264.

On November 5, 2005, Plaintiff returned to the ER, complaining of upper back pain, weakness and fatigue.  Upon examination, her breathing was labored and rapid and she was wheezing.  Plaintiff was given medication, diagnosed with asthma and bronchitis and discharged in better condition.  AR 251-256.

Plaintiff was seen again in the ER on November 8, 2005, for shortness of breath.  She reported that her inhaler and breathing treatment provided little relief.  Plaintiff refused oxygen and did not want to sit on an ER cot.  She denied any pain.  Plaintiff was given a breathing treatment and discharged after she reported that she was breathing better and easier.  AR 245-250.

Plaintiff returned to the ER on November 9, 2005, for asthma and back pain.  Plaintiff was short of breath.  A chest x-ray was negative for acute cardiopulmonary disease.  AR 243. Plaintiff was diagnosed with pneumonia, asthma and pleuritic right chest pain.  She was given medication and discharged.  AR 233-242.

Plaintiff was seen in the ER on November 16, 2005, complaining of edema in her legs. Plaintiff was described as tearful, anxious and "depressed appearing."  Her edema was treated and she was discharged.  AR 222-232.

Plaintiff was seen in the ER again on November 18, 2005, for edema in her lower legs and feet.  She rated her pain at a 10 out of 10 and said it was constant and burning.  Her work up was negative for heart or renal failure.  She was given ointment and medication and discharged. AR 207-212.

Plaintiff returned to the ER on November 20, 2005, for complaints of redness and swelling in her lower legs.  She also complained of wheezing.  She was diagnosed with edema and morbid obesity and discharged.  AR 213-221.

On November 22, 2005, Plaintiff was seen in the ER for abdominal pain, back pain and leg cramps.  Plaintiff had edema in her lower legs.  She was given medication and discharged. AR 199-204.

On February 12, 2006, Plaintiff sought ER treatment for shortness of breath, despite using her inhaler.  She was not in any acute distress and spoke in full sentences.  She was given a breathing treatment and discharged.  AR 333-340.

On March 17, 2006, Plaintiff returned to the ER for mild shortness of breath, after using her inhaler without relief.  A chest x-ray showed no acute cardiopulmonary disease.  She was diagnosed with an acute exacerbation of her asthma and acute bronchitis, given a breathing treatment and discharged.  AR 374-380.

On May 10, 2006, Plaintiff returned to the ER with complaints of shortness of breath and pain in her legs.  She had a rash on her legs, coarse breath sounds and scattered wheezing. Plaintiff was diagnosed with dermatitis, an upper respiratory infection and a history of asthma. She was given a medicated cream for her rash.  AR 413-414.

On May 31, 2006, Plaintiff was seen in the ER for shortness of breath, a sore throat and a cough.  She was diagnosed with a viral respiratory infection, given a breathing treatment and discharged.  AR 359-362.

Plaintiff returned to the ER on June 14, 2006, for shortness of breath and cold symptoms. She was given a breathing treatment and discharged.  AR 345-353.

On June 21, 2006, Plaintiff returned to the ER with shortness of breath.  A chest x-ray was normal.  AR 425.  She was diagnosed with asthma exacerbation and given prednisone.  AR 415-416.

Plaintiff was seen again in the ER on June 22, 2006, complaining of shortness of breath despite using her nebulizer.  Plaintiff reported that this felt like her "regular asthma."  On examination, Plaintiff was mildly hypertensive and had some inspiratory wheezes.  Plaintiff was

morbidly obese and did not appear to be in acute respiratory distress.  A chest x-ray was clear.

Plaintiff received prednisone and a breathing treatment, after which she felt better.  Plaintiff was

instructed to follow up with a regular doctor and was given a list of doctors to call.  AR 417-418.

On July 11, 2006, Plaintiff was seen in the ER for abdominal pain and chest pain.  She

was diagnosed with acute gastroenteritis and chest wall pain and discharged with mediation.  AR

406-412.

Plaintiff returned to the ER on August 6, 2006, for trouble breathing and a cough.  On

examination, Plaintiff was wheezing scantly and had pedal edema.  She was given a breathing

treatment and discharged.  AR 325-327.

Plaintiff was seen again in the ER on August 31, 2006, complaining of shortness of

breath, a cough and a burning sensation in her chest.  Plaintiff was tearful and refused a cardiac

monitor.  Plaintiff was diagnosed with acute exacerbation of her asthma, morbid obesity and

GERD, given Maalox and a breathing treatment, and discharged in improved condition.  AR

317-324.

Plaintiff returned to the ER on September 24, 2006.  She complained of trouble breathing,

a cough and chest tightness.  On examination, Plaintiff had decreased air movement but was

speaking in full sentences.  A chest x-ray was normal.  She was given oxygen and intravenous

fluids and diagnosed with pneumonia.  AR 462-468.

On October 17, 2006, Plaintiff underwent a consultive examination performed by Rustom

F. Damania, M.D.  Plaintiff complained of chronic low back pain, bronchial asthma and morbid

obesity.  Plaintiff was not dependent on oxygen or steroids, though she used a nebulizer.  On

examination, Plaintiff was described as an obese female in no acute distress.  She was 5 feet, 5.5

inches tall and weighed 446 pounds.  Her blood pressure was 120/78.  Plaintiff had a prolonged

expiratory phase and scattered rhonchi in her lungs.  Range of motion in all joints was normal, as

was her neurological examination.  Plaintiff's gait was within normal limits.  AR 303-307.

Dr. Damania diagnosed morbid obesity and bronchial asthma.  He opined that Plaintiff

could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for six hours

and sit for six hours.  She would have environmental restrictions due to her asthma.  AR 307-308.

A chest x-ray taken on October 21, 2006, was normal.  AR 461.

On October 24, 2006, Plaintiff returned to the ER for complaints of mild shortness of breath.  Plaintiff was lightheaded and anxious.  AR 459-460.

Plaintiff was seen in the ER again on November 12, 2006, for a cough and pain with deep breathing.  She also had a fever and chills.  She was diagnosed with pneumonia and given medication.  AR 456-457.

On November 21, 2006, Plaintiff returned to the ER for trouble breathing and a cough.  She had very distant breath sounds, though this could have been due to her obesity.   She was diagnosed with acute dyspnea and acute asthma exacerbation.  AR 454-455.

Plaintiff was seen in the ER again on November 25, 2006, for shortness of breath, difficulty breathing and a cough.  On examination, her breath sounds were clear and she was in no obvious distress.  She was given a breathing treatment.  Plaintiff was informed that this may not be asthma and that an alternate diagnosis should be explored, but she refused additional treatment.  AR 403-405.

Plaintiff returned to the ER on November 29, 2006, for a cough and difficulty breathing.  Her examination was limited by her obesity, though diffuse wheezing was detected.  Plaintiff was also anxious.  Chest x-rays were normal.  She was diagnosed with acute asthma exacerbation AR 451-453.

On December 1, 2006, Plaintiff went to the ER, complaining of a worsening cough, trouble breathing and chest tightness.  Her oxygen saturation was 96 percent and she had decreased air movement and wheezing.  A chest x-ray indicated that right basilar opacity may represent atelectasis versus developing infiltrate.  She was diagnosed with bronchitis and discharged after a breathing treatment.  AR 312-316.

On December 11, 2006, State Agency physician C.I.D.I. Rosa, M.D., completed a Physical Residual Functional Capacity Assessment form.  Dr. Rose opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for about six hours and sit for

about six hours.  Plaintiff had to avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation.  AR 388-392.

On December 20, 2006, Plaintiff returned to the ER for swelling and pain in her left leg. She was diagnosed with superficial cellulitis, dermatitis and morbid obesity.  AR 449-450.

Plaintiff was seen in the ER again on December 22, 2006, for a rash on her legs.  Plaintiff was given intravenous antibiotics and diagnosed with a skin rash, contact dermatitis and cellulitis.  AR 446-448.

Plaintiff returned to the ER the next day, December 23, 2006, for a re-check of her legs. Plaintiff had not filled her prescriptions because she could not pay for them.  Plaintiff was told the importance of obtaining a primary care physician for blood pressure monitoring.  The extent of Plaintiff's edema was difficult to assess because of her extreme obesity, though clear fluid was noted on the right lower leg.  She was given medication and discharged.  AR 445.

Plaintiff was seen in the ER again on December 25, 2006, for complaints of trouble breathing, a cough and chest tightness.  She was diagnosed with an acute exacerbation of asthma and cellulitis in her left leg.  AR 443-444.

Plaintiff returned to the ER on January 1, 2007, for complaints of trouble breathing and a skin rash.  She also complained of a sore throat and cough.  Plaintiff was diagnosed with an allergic reaction and upper respiratory infection.  She was given prednisone and Benadryl and discharged.  AR 439-440.

Plaintiff sought ER treatment on January 14, 2007, for chest pain, dizziness and a rash. Her bloodwork and an ECG were normal and a chest x-ray showed no signs of active cardiopulmonary disease.  Plaintiff was given a breathing treatment and discharged.  AR 396-402.

Plaintiff was seen in the ER on February 15, 2007, for complaints of shortness of breath and ankle swelling.  She was diagnosed with an acute exacerbation of asthma and mild cellulitis in her lower extremities.  AR 558-559.

Plaintiff returned to the ER on March 10, 2007, for complaints of asthma and an itchy rash. She had mild, scattered wheezes but was speaking in full sentences. Plaintiff also had a rash on her forearms and pedal edema in her lower extremities. AR 556-557.

Plaintiff was seen in the ER on April 13, 2007, though the notes from the visit are blank. AR 554-555.

On June 4, 2007, Plaintiff was seen in follow-up for her asthma and anxiety. She was diagnosed with anxiety and asthma and given medication. AR 552-553.

On June 25, 2007, Plaintiff went to the ER with complaints of chest pain and shortness of breath. On examination, Plaintiff was morbidly obese. An EKG and chest x-ray were normal. She was diagnosed with non-cardiac chest pain and discharged after she felt better. AR 549-551.

Plaintiff was seen in the ER on August 4, 2007, for complaints of chest pain and shortness of breath. A chest x-ray showed no acute pulmonary disease. She was diagnosed with acute chest and chest wall pain. AR 543-548.

Plaintiff returned to the ER on November 11, 2007, for trouble breathing and a cough. She was given prednisone and discharged. AR 540-541.

Plaintiff was seen again on November 20, 2007, for chest pain, asthma and a cough. She was given medication for her asthma. AR 539.

Plaintiff was seen in the ER again on December 20, 2007, for mild shortness of breath, chest soreness and a sore throat and cough. She was diagnosed with acute bronchitis and discharged. AR 537-538.

Plaintiff returned to the ER on December 30, 2007, for shortness of breath and an anxiety attack. On examination, Plaintiff was morbidly obese and anxious. Her oxygen saturation level was normal and she felt better after taking anti-anxiety medication. AR 535-536.

On January 8, 2008, Plaintiff was seen in the ER for complaints of shortness of breath for the past three weeks. A chest x-ray showed peribronchial cuffing and slight chronic degenerative changes similar to x-rays from August 5, 2007, and January 3, 2008. There was no acute cardiopulmonary disease or acute infiltrates, cardiomegaly or pleural effusions noted. She felt improved after a breathing treatment. AR 532-534.

On January 31, 2008, Plaintiff was seen in the ER again for complaints of shortness of breath.  A chest x-ray showed persistent peribronchial cuffing and slight chronic degenerative changes of the thoracic spine, but no focal infiltrates, effusion or pneumothorax.  She was diagnosed with asthma and bronchitis.  AR 529-531.

A pulmonary function test performed on March 7, 2008, showed a decrease that was suggestive of restrictive lung disease.  There was no significant bronchodilator response.  The test also showed a variable inspiratory limitation on the flow-volume loop, either secondary to poor effort or an upper airway lesion.  Clinical correlation was suggested.  AR 527-528.

Plaintiff returned to the ER the next day, March 8, 2008, after she was having trouble breathing for the previous 24 hours.  She had improved and was discharged after a breathing treatment.  AR 525-526.

Plaintiff was seen in the ER again on March 29, 2008, for complaints of trouble breathing, coughing and chest tightness.  She was given a breathing treatment and diagnosed with acute exacerbation of asthma and acute bronchitis.  AR 523-524.

Plaintiff returned to the ER on April 8, 2008, after she began having trouble breathing while playing with her grandchildren.  There was scattered wheezing but Plaintiff was speaking in full sentences.  Her oxygen saturation level was 96 percent, which the physician described as adequate.  Plaintiff improved and wanted to go home.  She was given a prescription for prednisone.  AR 521-522.

On April 18, 2008, Plaintiff was seen in the ER for a cough, sore throat, fever, chest tightness and pain on deep breathing.  There was decreased air movement in her lungs.  A chest x-ray showed nonspecific mild interstitial prominence and no acute process.  Plaintiff was diagnosed with asthma and bronchitis.  AR 518-520.

Plaintiff returned to the ER on April 29, 2008, for complaints of shortness of breath that started while she was cleaning her pool.  She was treated and released in improved condition.  AR 516-517.

On May 11, 2008, Plaintiff was seen in the ER for trouble breathing and chest tightness.  She was diagnosed with acute asthma exacerbation and discharged.  AR 514-515.

On May 21, 2008, Plaintiff returned to the ER for shortness of breath and tightness in her chest. Plaintiff was talking in full sentences and was not wheezing. A chest x-ray showed chronic interstitial changes, no acute pulmonary process and diffuse idiopathic skeletal ostosis. Plaintiff felt better and wanted to go home. She was given a prescription for prednisone. AR 506-508.

Plaintiff returned to the ER on May 28, 2008, for complaints of shortness of breath, chest tightness, lightheadedness, dizziness and anxiety. Upon examination, she was wheezing and anxious, though her labs and an EKG were normal. A chest x-ray showed congestive heart failure with mild pulmonary edema. AR 501-505.

Plaintiff returned to the ER on June 9, 2008, for complaints of trouble breathing and a cough, despite her nebulizer treatment. Plaintiff was given prednisone and a breathing treatment. She improved and was discharged. AR 499-500.

Plaintiff was seen in the ER again on June 19, 2008, for trouble breathing and pedal edema. A chest x-ray showed hypoventilated lungs and a borderline enlarged heart size. There was no focal pulmonary process. She was given a prescription for prednisone and discharged. AR 496-498.

On July 3, 2008, Plaintiff sought ER treatment for shortness of breath and swelling and pain in her legs. She was diagnosed with an acute asthma exacerbation and cellulitis, and given an antibiotic. AR 493-494.

Plaintiff was hospitalized on July 6, 2008, for treatment of bilateral lower extremity cellulitis. After two days, her rash improved and she was sent home on July 8, 2008, with instructions to finish the antibiotics. AR 483-489.

On July 18, 2008, Plaintiff was admitted to the hospital for treatment of bilateral leg cellulitis. Plaintiff was also treated for hypertension and anxiety disorder. An ultrasound of her bilateral extremities showed no evidence of deep vein thrombosis, though the examination was limited due to Plaintiff's obesity. Plaintiff was discharged on July 22, 2008. AR 472-473, 476-477, 482.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of asthma and obesity. AR 16. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, though she must avoid concentrated exposure to pulmonary irritants. AR 17. Based on this RFC and the testimony of the VE, the ALJ found that Plaintiff could perform her past relevant work as a cashier and medical assistant. AR 19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," _Richardson v. Perales_, 402 U.S. 389, 402 (1971), but less than a preponderance. _Sorenson v. Weinberger_, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." _Richardson_, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. _Jones v. Heckler,_ 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. _E.g._, _Burkhart v. Bowen_, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. _See Sanchez v. Sec'y of Health and Human Serv._, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

her disability; (2) has an impairment or a combination of impairments that is considered "severe"

(asthma and obesity) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3)

does not have an impairment or combination of impairments which meets or equals one of the

impairments set forth in Appendix 1, Subpart P, Regulations No. 4; and (4) can perform her past

relevant work as a cashier and medical assistant.  AR 16-19.

Here, Plaintiff argues that the ALJ (1) failed to properly develop the record; and (2) failed

to properly evaluate the severity of her nonexertional limitations.

**DISCUSSION**

A.    Development of the Record

Plaintiff first argues that the ALJ failed to request records from a treating source, despite

her identification of the records at the beginning of the hearing and her statement that she wanted

to add the records to her file.  Plaintiff also contends that the ALJ should have allowed her

witness to testify at the hearing.

A claimant is ultimately responsible for providing evidence to be used in an RFC finding.

20 C.F.R. § 404.1512(c).  However, the ALJ has a special duty to fully and fairly develop the

record and to assure that the claimant's interests are considered.  *Widmark v. Barnhart*, 454 F.3d

1063, 1069 (9th Cir. 2006).  This is especially true in situations where a claimant is

unrepresented by counsel.  *Id.*  Indeed, where a claimant is not represented, "it is incumbent upon

the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the

relevant facts" and to remain "especially diligent in ensuring that favorable as well as

1   unfavorable facts and circumstances are elicited."   <u>Cox v. Califano</u>, 587 F.2d 988, 991 (9th Cir.

2   1978).

3       1.   *Additional Medical Records*

4       As set forth above, at the beginning of the August 4, 2008, hearing, Plaintiff, who

5   proceeded without a representative,[2] informed the ALJ that she wished to add certain records to

6   her file.  Specifically, she identified a note from her doctor stating that she could not work, as

7   well as records from "Sierra Clinic," where she had been treated for the prior two years.  AR 28-

8   29.[3]

9       The record indicates that a request from the ALJ was made on August 11, 2008, three

10  days after the hearing, to "Sierra Industrial Medical Clinic," 3636 N. 1st, Suite 135, Fresno, CA

11  93726.  AR 563.  The ALJ made a second request, dated August 25, 2008.  This request was

12  returned with a notation that there were no responsive records.  AR 563-564.

13      Plaintiff acknowledges that the ALJ made this request, but contends that she listed the

14  facility as Sierra Clinic, 3837 Clark, Fresno, CA 93726, in a July 2008 Disability Report on

15  Appeal.  AR 186.  She also identified her physician as Dr. Gable.  AR 186.

16      Plaintiff therefore argues that the record is incomplete because the ALJ requested records

17  from the wrong clinic.  Defendant contends that this argument is a "red herring" because Sierra

18  Clinic is part of Community Medical Center, and since the ALJ requested and received records

19  from Community Medical Center, he took the necessary steps to develop the record.  Opposition,

20  at 6.  Defendant also states that Community Medical Center "provided all of Plaintiff's records

21  held by the Sierra Clinic."  Opposition, at 7.

22      Defendant's arguments are not convincing.  First, although it appears that the Sierra

23  Clinic to which Plaintiff refers is part of Community Medical Center, the address listed on

24  Community Medical Center's website, to which Defendant cites, is different than the address

25

26  _____

27      [2] There is no issue as to Plaintiff's decision to proceed without counsel.

28      [3] Plaintiff also identified records from Community Regional Medical Center concerning her two recent
    hospitalizations that were successfully requested by the ALJ after the hearing.  AR 28-29, 471.

given by Plaintiff.  The website lists "Community Health Center- Sierra" as located on E. Dakota Avenue in Fresno.

Second, Defendant's contention that the medical records received from Community Medical Center included the records from Sierra Clinic is belied by the record.  Most, if not all, of the records from Community Medical Center relate to Plaintiff's repeated ER visits and her two hospital admissions, and none reference Dr. Gable.  AR 432-468, 471-562.  Moreover, Defendant's statement that "Community Medical Center directed requests for all medical records to a central dispatch" is not supported by the cited evidence.  Defendant points to an "Emergency and Urgent Care Services Conditions of Admission or Service" signed by Plaintiff on February 12, 2006, during one of her ER visits.  The second page of the document lists the addresses to which requests for records should be sent for Community Regional Medical Center, University Medical Center, Community Medical Center- Clovis and Community Medical Center- Oakhurst. AR 343-343.  This information does not specifically reference Community Medical Center's outpatient clinics and the Court will not engage in such speculation.

To the extent that Defendant argues that Plaintiff failed to demonstrate that her lack of counsel resulted in prejudice or unfairness, this is irrelevant to the ALJ's duty to develop the record.  Finally, to the extent that Defendant contends that the ALJ went to "great lengths" to develop the record by requesting new evidence from Plaintiff at the hearing, inviting her to testify in full, sending a proper request to Plaintiff's treating source and allowing her to testify without obstruction, such actions are ordinary, required tenants of the administrative process and certainly do not show that the ALJ satisfied his heightened duty to develop the record.

Therefore, in light of the ALJ's heightened duty where a claimant is unrepresented, the Court concludes that the ALJ failed to fully develop the record.  Plaintiff provided a specific address for the Sierra Clinic and the name of her doctor, yet the ALJ requested records from an unrelated provider.  When the request came back with a notation that no such records existed, the ALJ made no further inquiries, despite Plaintiff's testimony that she had been treated at the Sierra Clinic for two years.

2.      *Plaintiff's Third Party Witness*

Plaintiff next faults the ALJ for not getting involved when staff prohibited her neighbor from entering the hearing room.  She contends that the description of the Administration's interview of Plaintiff on January 3, 2007, should have "alerted the ALJ to the necessity of" the neighbor's testimony.  During that interview, the interviewer, B. Campbell, noted that Plaintiff had "lots of difficulty breathing, shortness of breath, [gasping] for air" and coughed throughout the interview.  AR 166.

Plaintiff testified that her neighbor was not allowed into the hearing room because she did not have proper identification.  AR 47.  The neighbor was therefore not in compliance with the Administration's rules and the Court will not subvert these rules by finding that the ALJ should have intervened.

However, this does not mean that the ALJ should not have conducted a further inquiry under the circumstances.  When asked if Plaintiff had any witnesses to testify on her behalf, she stated, "No, because they won't let her in."  AR 30.  In other words, Plaintiff wanted to present a third party witness but was unable to do so.  Regardless of why Plaintiff could not present her testimony, the ALJ should have sought additional information in light of Plaintiff's pro se status. This is especially true given the notes from the January 3, 2007, interview, which lend third party support to Plaintiff's claims.

The ALJ's development of the record was not free of legal error.  Remand will be discussed at the end of this opinion.

B.      Plaintiff's Testimony

Plaintiff next argues that the ALJ erred in assessing her nonexertional limitations because he improperly discredited her testimony.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been

17

established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

The ALJ began his credibility analysis by explaining that the "record indicates that most of the time her complaints are worse than the objective findings." AR 18. For example, the ALJ notes that Plaintiff has had negative chest x-rays, is able to speak in full sentences, has clear lungs and oxygen saturations between 94 percent and 97 percent. AR 18. He also explains that pulmonary function testing revealed "only" restrictive lung disease and that there was no significant bronchodilator response. He characterizes Plaintiff as a "frequent visitor of the emergency room" and noted that her treatment consists of "breathing treatments and a 10 day prescription of prednisone after which she feels better and is discharged." AR 18.

Comparing a claimant's allegations with the objective medical evidence is permissible so long as it is not the sole reason for rejecting subjective allegations. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The analysis must, however, be supported by substantial evidence. Here, the ALJ characterizes Plaintiff's objective findings as "mild," yet his statements are not supported by substantial evidence. By making blanket statements, the ALJ ignores the overall record and specific instances that undermine his conclusions.

For example, while many of Plaintiff's chest x-rays were negative, the ALJ fails to note that Plaintiff's most recent chest x-rays were not normal. Chest x-rays on January 8 and January 30, 2008, showed persistent peribronchial cuffing. AR 529-534. An April 2008 chest x-ray showed nonspecific mild interstitial prominence. AR 518-520. A May 21, 2008, chest x-ray

showed chronic interstitial changes.  AR 506-508.  On May 28, 2008, her chest x-ray showed

congestive heart failure and mild pulmonary edema.  AR 505.  A chest x-ray taken in June 2008

showed hypoventilated lungs and a borderline enlarged heart size.  AR 498.

Similarly, the ALJ states that Plaintiff is able to speak in full sentences, and has clear

lungs and oxygen saturation levels of 94 percent to 97 percent.  The ALJ implies that these

findings lessen her credibility, yet this ignores that fact that on many visits, examinations

showed, either singularly or in combination, decreased breath sounds, labored breathing, rapid

breaths, wheezing, coarse breath sounds and decreased air movement.  AR 251-256, 265-272,

257-264, 312-316,  325-327, 413-414, 417, 451-453, 462-468, 501-505, 506-507, 518-520, 521-

522.  During her consultive examination, Plaintiff demonstrated a prolonged expiratory phase

and scattered rhonchi.  AR 303-307.  Such findings suggest that the ALJ concentrated only on the

objective evidence that he believed supported his opinion and ignored contrary findings.

The ALJ's improper reading of the medical evidence is further demonstrated by his

description of Plaintiff's pulmonary function testing.  He states that it "*only* noted restrictive lung

disease."  AR 18 (emphasis added).  In the next sentence, he states that there was "no

bronchodilator response," without further explanation.  AR 18.  It appears that the ALJ

interpreted this as a positive outcome, yet Plaintiff does indeed have restrictive lung disease that

does not appear to respond to bronchodilator treatment.  While the Court is not in a position to

determine the severity of such findings, the test results do not support the ALJ's ultimate

interpretation of the record.  In fact, that Plaintiff did not respond to bronchodilator treatment is

consistent with a majority of her ER visits, which were necessary *after* her home treatment with

inhalers and a nebulizer failed.

In another questionable characterization of the record, the ALJ states that Plaintiff's ER

visits increased after the filing of her claim, in an attempt to suggest that she was exaggerating

her symptoms.  AR 19.  The ALJ is correct that Plaintiff's ER visits increased over the years,

though he ignores the fact that there were objective findings that accompanied these visits and

that Plaintiff almost always required treatment.  He also overlooks the fact that Plaintiff's x-rays

and hospitalizations in 2008 demonstrate objectively that her condition had deteriorated.

The ALJ's next reason for questioning Plaintiff's credibility is simply incorrect. The ALJ makes much of the fact that Plaintiff "was able to baby-sit her grandson for several months in 2008 and also sometimes took care of a neighbor's child." AR 19. Plaintiff testified, however, that she took care of her grandson *with the help of her neighbor*. AR 32. Plaintiff therefore did not watch two children, but rather watched one child with the help of another adult. The ALJ also suggests that Plaintiff watched her grandson for "several months," though Plaintiff's work background on her appeal paperwork indicates that she watched her grandson from May 1, 2008, through June 9, 2008. AR 191.

Finally, and perhaps most egregiously, the ALJ faults Plaintiff because the record "does not contain any opinions from treating or examining physicians" indicating more limitations than those found the RFC finding. AR 19. While the consultive examiner's opinion was the basis for the RFC finding, a treating source opinion would have been entitled to greater weight and may have been in the record had the ALJ sent the request to the correct clinic or followed up after no records were located. In other words, the ALJ has faulted Plaintiff for his own deficiency.

The ALJ's credibility analysis is not supported by substantial evidence.

C.      Remand

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, it appears that there may be additional records that would assist the Commissioner in analyzing Plaintiff's disability and credibility. The Court therefore finds that the action should be remanded for further proceedings. On remand, the ALJ should obtain records from Plaintiff's treating sources, or confirm that none exist.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not free of legal error. The decision is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Donna S. Miller and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **July 22, 2010**              **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE